I'd like to start out with count 9 which was the false bank entry count under 18 U.S.C. 1005. The evidence at trial showed that in 2007, Mr. Lo applied for a mortgage for a home he was buying in Georgia. The mortgage company, Premium Capital, sent to the defendant's bank, Commerce Bank, a form entitled Request for Verification of Deposit. The evidence showed that the defendant had a friend of his who worked at the bank fill in an inflated balance showing he had more money in his checking account than he actually did. And then that form was returned to the mortgage company. I think you can assume that we know the facts. We'll let you get right to your argument. So section 1005 provides that a bank employee cannot make any false entry into any book report or statement of the bank with the intent to defraud. So the first question is, was this verification of deposit form a book report or statement of Commerce Bank? And it was not. We know this for several reasons. First, the purpose of the false entry statute, as the Supreme Court has told us, is to make sure that upon inspection of a bank, its books of account paint an accurate picture of its true condition. Here, the form— Why isn't the form a statement? Because in this context, a statement doesn't just mean an assertion. A bank statement is a term of art. It means a compilation of the assets and liabilities of the bank. And in fact, we know that the false entry statute is meant for a purpose that—to show people how much money the bank has and what its condition is. This form— Why wasn't this a representation of the balances? It was a representation of the balances. It was a representation of Mr. Lowe's balance. Yeah. But the question before we get to that is, was this a book report or statement of Commerce Bank? It was a form generated by the mortgage company, maintained by the mortgage company, requested by the mortgage company. At most, what we have here is a Commerce Bank employee making an entry on a mortgage company report. The form itself actually suggests that it's not a book report or statement of the bank, because the form itself says to the bank, your response is solely a matter of courtesy for which no responsibility is attached to your institution. So the form tells us, oh, the mortgage company is asking for this information from the bank as a favor. So the question really becomes, what interest is protected by this statute, the false interest—false entry statute? What authority do you have for reading the term statement in the way you're now urging? Well, the Supreme Court in Giles told us what the purpose of— Right, but that's not how we construe statutory language. We start with the plain meaning of the words. And the plain meaning of the word in this context is— It's not a statutorily defined term. No, but there's been no case law that says this is what a statement means. Well, if it's not statutorily defined, it would have its plain meaning. And its plain meaning as to a bank is not simply an assertion. Moreover, if we— An official assertion by the bank representing itself to be the bank's statement of what assets it is holding would seem to me to fit well within the plain meaning. May I ask where in your brief you argue this point? Because I understood you to be quite concerned in your brief about whether the statute applied only to bank employees. That's—that was in the initial brief as well as this argument. And I can find it for the Court— When you come up on rebuttal, you'll tell us. Is this the only point you want to argue? No, it isn't. But can I just make one further point on this? Or you have—you can use your eight minutes any way you want. Thank you. So if you were to construe this as the statement of Commerce Bank, that is, how much money Melvin Lowe had in his account was the statement of Commerce Bank, it negates, in a way, the meaning of entry in a statement of the bank. You need to have both in order to violate the statute. It needs to be an entry by a bank employee into a book, report, or statement of the bank. Here we have an entry by a bank employee into a statement of the mortgage company or a report of the mortgage company. The other point I'd like to address is the failure to give a reliance on advice and instruction. The defendant requested a charge on reliance on the advice of his tax preparer. And the evidence showed that the defendant told his girlfriend he wanted to take care of his taxes. The girlfriend introduced him to someone named John Murphy, who held himself out as a certified accountant, financial consultant, and a tax preparer. Murphy had an office. He had a tax preparer ID number. Murphy—the evidence showed that Murphy told the defendant to first file his personal returns and then file his business returns. And not to include the money paid to his LLCs on his personal returns. The defendant never ultimately filed his business returns. The evidence was that he tried to get back in touch with John Murphy and finally gave up. The court found that there was some evidence to show that the defendant had fully and truthfully disclosed his income tax to the tax preparer. It found the evidence was not particularly strong, but it found there was some evidence. And under this court's case law, that is sufficient to warrant an instruction like this as long as the other requirements are met. What was the accountant's advice that the defendant relied on? The evidence showed that the accountant advised the defendant to file personal returns first. It appears— Followed by business returns. Followed by business returns. And he never did that. So how does this succeed on the fact that he believed the advice and he followed it? Because he was charged with filing false tax returns. Right, but to the extent the explanation is my accountant told me, file my personal returns first, presumably without the business income, and then file the business returns. He never filed business returns. That's correct. And so he's not qualified to get the charge because you have to show that you relied on it and followed it. Except that the evidence shows that he tried to follow up with the accountant to get the business tax returns. For years he didn't file business returns. That's correct. Without an extension. That's correct, Your Honor. But the evidence that was introduced at trial shows that he tried to get back in touch with this tax preparer. Moreover, the court didn't find that that was the problem here. We understand the argument, and we'll rely on your briefs for it. Thank you. Let's hear from your adversary. Good morning, Your Honors. Perry Carbone, Assistant United States Attorney, Southern District of New York. I was one of the lawyers who represented the government below. As the record plainly demonstrates, there was no error at all in either the district court's trial or post-trial rulings. I'll address points 1 and 2, 1 and 4, as addressed by the appellant, unless the Court has questions about some of the other points. Now, the first point, with respect to Count 9, as Your Honor pointed out, Judge, the first thing you do as a rule of statutory construction is look at the statute itself. You don't have to worry about what was intended without looking first at the plain wording of the statute. Section 1005 has four subdivisions. You can violate the statute in four ways. The first two relate to unauthorized action by bank employees, not authorized by the board. Subsection 4 relates to kickbacks. That's not our case. We're really talking about Section 3. That section plainly says on its face, whoever makes any false entry in any report or statement of such bank with intent to injure or defraud the bank or any company or any other company, body politic, or corporate, or any individual person. So the statute plainly on its face prohibits a bank employee from making a false report with the intent to defraud a third party. That fits squarely in the facts of this case. As Your Honor knows from reading the briefs, Mr. Lowe went to an employee of Commerce Bank, and by any definition, the request for verification of deposit was a statement of the bank. This is a situation where the mortgage lender cared enough about the deposits on hand of this borrower that they wanted the bank to certify what that was. Give us a statement of what's in your records. And it was highly material because if you look at Government Exhibit 301, which was the residential uniform loan application that he submitted to the mortgage lender, on page 4 of that document, they ask him about the deposits on hand because he was obligated, based on the purchase price of the transaction, to come up with $65,000 that he had to give to the seller, and he had to come up with another $10,000 for closing costs. He had a couple of thousand dollars in his bank account. So this was a critically important statement to the lender. And that's why Mr. Lowe went to his friend and asked him to create a false statement from the bank that falsely reflected that he had $80,000 on deposit at the time that the form was submitted, which was some weeks before the closing. So, you know, whether there's some legislative history out there about a prior statute, a predecessor statute, is really irrelevant because the conduct charge in this case fits squarely within the third prong of Section 1009. The defendant's, the appellant's first point with respect to the jury instruction, there we can see that there was some evidence that a return preparer was involved. That evidence comes primarily from Ms. Camerara, who did say that she brought him to a return preparer and overheard a conversation in which he said, in words or substance, you'll prepare the personal returns first and then the business returns. So there are four things under Evangelista that you have to be able to point to to get that instruction, four things. You have to show first that you in good faith sought out the advice of a competent accountant. We'll concede that there was some evidence in the record, the testimony of this witness, that he went to an accountant, whether he was competent is another story, but we'll concede that there was evidence on that prong. The second prong, that he made full and accurate disclosure to the accountant. There's very little evidence in the record that he made any disclosure other than that he reported, he disclosed to the accountant some amount of gross receipts that was vastly different from his actual gross receipts. How do we know that? Well, there were the returns that were actually filed. He files Schedule Cs, where these were sole member LLCs, and you don't file separate business returns. You file, you report your income on the sole member LLCs. That's, in fact, what happened here. He reported about roughly $25,000 a year for the three years he files the returns, which was about 10% of his income. And as the revenue agent testified, that's the proper methodology for reporting your gross receipts for these LLCs. Line one on the Schedule C, that's it. What were your gross receipts? And that's what he did. He filed a return with a Schedule C attached. That dramatically understated his gross receipts. Now, the appellant points to the fact that there were pro forma returns that he submitted for another purpose to a landlord at a luxury building in Manhattan that had returns that reported significantly higher gross receipt income figures on the Schedule C. Those returns, accepting that they were prepared by this return preparer, although the testimony was that they were provided to the landlord, not by the return preparer, but by the appellant himself, still fell far short of the actual reported gross receipts by about $100,000 a year. So there, as to prong two, whether he made full and accurate disclosure to the accountant, there's almost no evidence of that. And the witness that testified, the girlfriend, said that she wasn't privy to what information he actually gave to the accountant. So he fails on prong two. And then most importantly, Judge Rogers, you pointed out, that he acted in strict accordance with the advice he received. Let's assume that he got this erroneous advice that says, you know what, you can file your personal return, then we'll file a business return, even though that was wrong, as the revenue agent said, because you don't file separate business returns for an LLC. Let's assume that he got that advice. Those returns were filed in 2010. When the IRS came knocking three years later, he still hadn't filed any business returns or any personal returns for the next three years. So under no stretch of the imagination — Did I have an understanding that he did declare some business income on his personal return? I'm sorry. Did I understand it correctly that he did identify some business income on his personal return? Right. So there are three tax — there are six tax counts, the first three, 07, 08, 09. Those he files, and he reports some business income, about $25,000 a year. And didn't file a supplemental business income return for that year, and then didn't file any returns for the — The next three years until the IRS showed up. Right. And there was ample evidence that he was ignoring the letters that the IRS was sending to him, did a search warrant, found these letters in his closet, which showed he didn't even open them. So there was no effort at all to act in strict accordance with the advice he received. And then the fourth prong, obviously, is that he had no reasonable basis to believe that the advice was incorrect. I think there is also no evidence in the record to support that fourth prong. So this case is really very much like Evangelista. In that case, it was a payroll tax case, family-owned businesses. They engaged the services of an accountant who was corresponding with the IRS and negotiating with them. The defendants in that case filed payroll tax returns but never made remittances. And so they called the accountant to say, yes, he came to me. He said he wanted to work this out. And on cross-examination, he admitted that I never told him that he didn't have to pay the remittances. So there was no evidence, like in Evangelista, like here, that the defendant actually relied on the advice that was given. So, and by the way, he was, in this case, he was the general willfulness instruction, just like in Evangelista and every other tax case. The jury is instructed that you have to prove, you have to find that the defendant knew that what he was doing was against the law. And he was fully permitted to argue that in summation. He did argue that in summation. And as we said in the court below and in our brief here, a reliance instruction, he can't show any prejudice here because that instruction would have highlighted how woefully he's failed on the prongs two, three, and four to elicit any evidence at all that he actually relied on the advice of a return preparer. I see my time's about out. If the court has no further questions on any other points raised in the brief, we'll rest on our brief. Thank you. Thank you. Ms. Schneider. First, Your Honor, I asked where in the brief. I think I found it 46 to 49. Exactly. Thank you. Next, I'd just like to point out that there is no case law interpreting from anywhere, interpreting the false entries statute in the way that the government seeks to interpret it here. And, in fact, You're not construing it the way you urge either. Isn't that right? Your argument at pages 46 to 49 is basically made by looking at what the purpose of the statute is and its predecessor statutes, right? That's right. But I don't see any in which you found a case that says that a bank employee who puts false information in a statement that the bank provides another financial institution doesn't violate this statute. Well, Your Honor, I just point the court's attention to another statute that wasn't charged here, which is 1014, which is obviously the law that's supposed to apply in these circumstances. Section 1014 says whoever knowingly makes any false statement or report or willfully overvalues any property for the purposes of influencing in any way a mortgage lending business is guilty of a crime. Now, that statute was amended to include mortgage lending businesses after Right, and that reaches quite broadly, the statute you've just read to us. This one is concerned with the reliability of official records and statements of a bank. Now, this wasn't coincidentally done. This was one bank asking another bank, what do your records show? And the statement was made entering an amount that was not what the records showed. Well, Your Honor, first it was a mortgage company asking a bank, which is important for the purposes of the statute. All right, we're not concerned with any other company part of this. Yes. And the other thing I'd just like to point out is that unlike other cases that we cite in the reply brief, there was no evidence presented, no witness from the mortgage company, to testify that this information would have been material to its decision. And this was 2000 I don't think that's a requirement, is it, in the statute? There must be some evidence that the jury has to have some evidence on which to find that the requirements of the statute are met. All right. This was 2007. This podium could have gotten a mortgage in 2007. You know, I find it curious that all of this is argued, and other than telling us what the words say, none of this is developed in your brief at all. All right, but we'll take it under consideration. Thank you.